# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CROSS-VALIANT CELLULAR PARTNERSHIP, an Oklahoma partnership, and<br>CROSS WIRELESS, LLC, an Oklahoma limited liability company,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, acting by and through Sonny Perdue, Secretary of Agriculture, RURAL UTILITIES SERVICE, acting by and through Chad Rupe, Administrator,<br><br>PINE TELEPHONE COMPANY, INC., an Oklahoma Corporation, and<br>PINE CELLULAR PHONES, INC., an Oklahoma Corporation,<br><br>*Defendants*, | Case No. CIV-20-334-RAW |

## **ORDER**

Cross-Valiant Cellular Partnership and Cross Wireless, which collectively do business as "Bravado Wireless" (hereinafter "Bravado"), brought this action against the United States Department of Agriculture and the Rural Utilities Service (hereinafter collectively referred to as the "Federal Defendants") and Pine Telephone Company, Inc. and Pine Cellular Phones, Inc. (hereinafter collectively referred to as "Pine") on September 28, 2020. Bravado filed its Amended Complaint on January 22, 2021.

Bravado brings four claims for relief pursuant to: (1) the Consolidated Appropriations Act of 2018; (2) the Appropriations Clause of the United States Constitution; (3) the Administrative Procedures Act; and (4) the *Ultra Vires* doctrine.  Bravado seeks an order and judgment: (1) declaring the Federal Defendants' decision to award funding to Pine unlawful pursuant to Bravado's claims; (2) enjoining the Federal Defendants from distributing funds to Pine; (3) awarding Bravado its reasonable attorneys' fees and costs; and (4) granting any other relief the court deems just and proper.

As Bravado alleges, in 2018, Congress passed a bill to provide loans and grants to fund the deployment of broadband internet in rural areas.  Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Stat. 348 (Mar. 23, 2018) (hereinafter the "2018 Act").[1]  The essential goal

---

[1] The 2018 Consolidated Appropriations Act states in pertinent part:
> SEC. 779. For an additional amount for "Rural Utilities Service—Distance Learning, Telemedicine, and Broadband Program", $600,000,000, to remain available until expended, for the Secretary of Agriculture to conduct a new broadband loan and grant pilot program under the Rural Electrification Act of 1936 (7 U.S.C. 901 et seq.): *Provided*, That for the purpose of the new pilot program, the authorities provided in such Act shall include the authority to make grants for such purposes, as described in section 601(a) of such Act: *Provided further*, That the cost of direct loans shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further*, That at least 90 percent of the households to be served by a project receiving a loan or grant under the pilot program shall be in a rural area without sufficient access to broadband, defined for this pilot program as 10 Mbps downstream, and 1 Mbps upstream, which shall be reevaluated and redetermined, as necessary, on an annual basis by the Secretary of Agriculture: *Provided further*, That an entity to which a loan or grant is made under the pilot program shall not use the loan or grant to overbuild or duplicate broadband expansion efforts made by any entity that has received a broadband loan from the Rural Utilities Service: *Provided further*, That in addition to other available funds, not more than four percent of the funds can be used for administrative costs to carry out this pilot program and up to three percent may be utilized for technical assistance and pre-development planning activities to support the most rural communities, which shall be transferred to and merged with the appropriation for "Rural Development, Salaries and Expenses": *Provided further*, That the Rural Utility Service is directed to expedite program delivery methods that would implement this section: *Provided further*, That for purposes of this section, the Secretary shall adhere to the notice, reporting and service area assessment requirements set forth in sections 6104(a)(2)(D) and 6104(a)(2)(E) of the Agricultural Act of 2014 (7 U.S.C. 950bb(d)(5), and 950bb(d)(8) and 950bb(d)(10)).

of the program under the 2018 Act is to expand broadband service to rural areas that lack sufficient access to broadband.  The program became known as the "ReConnect Program."

In 2020, the Federal Defendants awarded Pine grant funds under the ReConnect Program to provide broadband service to communities in and around Idabel, Haworth, Ethel, Oleta, and Rattan, Oklahoma.  These grant funds were awarded over Bravado's objection, as the Federal Defendants determined that Bravado's network did not qualify as "fixed terrestrial broadband service."  Bravado argues, *inter alia*, that this determination was in error.

Before the court is Bravado's motion for preliminary injunction, seeking an order enjoining the Federal Defendants from distributing the grant funds to Pine during the pendency of this action [Docket No. 12].  Defendants object to the motion.  "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

To obtain the preliminary injunction, Bravado must demonstrate:

1. a likelihood of success on the merits;
2. a likelihood that Bravado will suffer irreparable harm in the absence of preliminary relief;
3. that the balance of equities tips in Bravado's favor; and
4. that the injunction is in the public interest.

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).  When the Government is the opposing party, the "balance of equities" and "public interest" factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The "primary goal of a preliminary injunction is to preserve the pre-trial status quo." *RoDa Drilling,* 552 F.3d at 1208.

---

Pub. L. No. 115-141, 132 Stat. 348, Div. A, Title VII § 779 (Mar. 23, 2018).

Bravado has not demonstrated a likelihood of success on the merits. Bravado makes the conclusory argument that the Federal Defendants' approval of Pine's ReConnect Program grant applications will cause an overbuild of broadband service in its existing network, and thus the approval is contrary to the 2018 Act. Bravado further argues that for this reason, the Federal Defendants violated the Appropriations Clause and the Administrative Procedures Act (hereinafter "APA") and acted *ultra vires*.

While Bravado cites the Appropriations Clause and the *ultra vires* doctrine, this is chiefly an APA action.[2] The standard of review under the APA is very deferential to the agency. *New Mexico Health Connections v. United States Dept. of Health & Human Srvcs.*, 946 F.ed 1138, 1162 (10th Cir. 2019). The Federal Defendants' actions "are entitled to a presumption of regularity," and Bravado "bears the burden of persuasion to show that [the Federal Defendants] acted arbitrarily and capriciously." *Id*. Deference to the agency "is most pronounced in cases where, as here, the challenged decision involves 'technical or scientific matters within the agency's area of expertise." *Western Watershed Projet v. Bureau of Land Mgmt.*, 721 F.3d 1264, 1273 (10th Cir. 2013).

An agency decision is arbitrary and capricious only when the agency:

---

[2]  The Appropriations Clause of the Constitution, Art. I, § 9, cl. 7, provides that: "No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." "[I]n other words, the payment of money from the Treasury must be authorized by a statute." *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). Under the *ultra vires* doctrine, the question "is always whether the agency has gone beyond what Congress has permitted it to do." *City of Arlington, Tex. V. F.C.C.*, 569 U.S. 290, 291 (2013).
  To find that the Federal Defendants violated the Appropriations Clause and/or that they acted *ultra vires* would be to find that the 2018 Act unequivocally did not authorize them to approve Pine's grant application thereunder. Before reaching those more extreme questions, the court must first determine whether the approval violated the APA. If the Federal Defendants did not violate the APA, they also did not violate the Appropriations Clause or act *ultra vires*. If the Federal Defendants violated the APA, the next questions would be whether they also violated the Appropriations Clause and/or acted *ultra vires*.

> (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on the consideration of the relevant factors, or (4) made a clear error of judgment.

Bravado argues that the Federal Defendants violated the APA by not adequately testing its fixed wireless broadband service and not testing another provider's – Valliant's – at all. Ultimately, the Federal Defendants' decision was based on their determination that Bravado provided only non-qualifying mobile service. Bravado argues that this decision was arbitrary and capricious. In light of the highly deferential standard under the APA, however, Bravado has not demonstrated its likelihood of success on the merits.

Bravado also has not demonstrated a likelihood that it will suffer irreparable harm in the absence of preliminary relief. Bravado conclusorily argues that because the approval of Pine's applications is a clear violation of the Appropriations Clause, it need not show further irreparable harm. The court does not agree. As noted above, if the Federal Defendants did not violate the APA in approving Pine's applications under the 2018 Act, then they could not have violated the Appropriations Clause in doing so. Moreover, while Bravado argues that it spent $2 million enhancing its fixed wireless network, it does not inform the court as to how many current or potential customers it may lose in the absence of preliminary relief.

Finally, Bravado has not shown that the balance of equities tips in its favor or that the injunction is in the public interest. Bravado has not shown that any injury it might suffer without an injunction would outweigh any injury to Pine if the court were to issue the injunction. Moreover, in light of the purpose of the ReConnect Program and Congress' directive to the Rural Utility Service "to expedite program delivery methods that would implement this section," it

seems in the public interest to move forward in providing broadband service to any under-served rural areas.

Accordingly, Bravado's motion for preliminary injunction [Docket No. 12] is hereby DENIED.

**IT IS SO ORDERED** this 22nd day of February, 2021.

*[signature: Ronald A. White]*
___
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**